UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

SUSAN ALLAIN                                          CIVIL ACTION NO. 13-2754

VERSUS                                                JUDGE ROBERT G. JAMES

BOARD OF SUPERVISORS OF THE                           MAG. JUDGE KAREN L. HAYES
UNIVERSITY OF LOUISIANA SYSTEM
d/b/a UNIVERSITY OF LOUISIANA
AT MONROE

# RULING

This is an employment discrimination case in which Plaintiff Susan Allain ("Allain") asserts

claims against University of Louisiana System, d/b/a University of Louisiana at Monroe  ("ULM")

under Title VII of the Civil Rights Act of 1964, 42 U.S.C § 2000(e), *et seq.* ("Title VII"); the Age

Discrimination Employment Act, 29 U.S.C. § 623, *et seq*. ("the ADEA"); the American with

Disabilities Act, 42 U.S.C. § 12112, *et seq*. ("the ADA"); and the Family Medical Leave Act, 29

U.S.C. § 2601, *et seq.* ("the FMLA").  She also asserts a state law breach of employment contract

claim.

 Pending is ULM's "Motion to Dismiss for Failure to State a Claim Upon Which Relief can

be Granted and Motion for Summary Judgment." [Doc. No. 13].  Plaintiff filed a memorandum in

opposition. [Doc. No. 22]. ULM filed a reply. [Doc. No. 23].

For the following reasons, the motion is **GRANTED IN PART** and **DENIED IN PART.**

I.    FACTS AND PROCEDURAL BACKGROUND

Allain was employed at KEDM 90.3 Public Radio ("KEDM") for approximately 16 years.

KEDM is operated by ULM.  From October 2010 through March 1, 2011, Allain was on FMLA-

protected leave to have back surgery.  Approximately six weeks after she returned, on April 15, 2011, Jeffrey Cass, Dean of the College of Arts and Sciences ("Dean Cass"), informed Allain that she was being terminated "without cause." [Doc. No. 22, Exh. 4, Letter from Dean Cass to Allain]. Allain was 59 years old at the time.  Immediately after she was terminated, Allain's responsibilities were assigned to Ashley Yeldell, a 26-year-old female.  Ultimately, Allain's position was filled by Lila Strode, a 48-year-old female.

KEDM also dismissed two other women over the age of 55 between 2009 and 2011, both of whom were replaced by individuals younger than them. [Doc. No. 22, Allain Deposition, Exh. 1, p. 50].  Another KEDM employee, Ray Davidson  ("Davidson"), made claims to the EEOC that Joel Willer ("Willer"), the Director of KEDM and Allain's direct supervisor, forced him to retire when he was 60 years old. [Doc. No. 22, Davidson Affidavit, Exh. 13].

Allain testified that, prior to her termination, she overheard a conversation between Dean Cass and Willer in which Dean Cass told Willer that "he wished he could get rid of all the old professors, but that he couldn't because they were tenured." [Doc. No. 22,  Allain Deposition, Exh. 1, p. 25].  Shortly after Willer became Allain's direct supervisor, Willer told Davidson he intended to get rid of Allain and to replace her with a younger employee.  [Doc. No. 22,  Davidson Affidavit, Exh. 13]. Davidson avers that Willer, referring to Allain, told him on numerous occasions he wanted "new blood."  *Id.*

Willer testified that he did not consider Allain's age in his recommendation to terminate her; rather, he claims that Allain was terminated because of her poor performance and insubordination.[1]

---

[1] ULM relies on Willer's deposition in its argument but did not file a copy of that deposition in the record.

Allain was employed as KEDM's development director when she was terminated.  In that role, Allain was primarily responsible for fundraising.

Willer stated that Dean Cass instructed him to terminate Allain a year before, in April 2010, after Willer presented Dean Cass with a memorandum outlining the station's fundraising underperformance.  *See* [Doc. No. 13, Willer Memorandum, Exh. D].  Willer testified that he decided not to terminate her at that time because he hoped the fundraising shortfalls could be rectified, and, because the station had recently terminated another employee, he did not want the disruption.[2] Willer claims that he definitively made the decision to terminate Allain before she took FMLA leave in October 2010 and, accordingly, had begun collecting other stations' director position advertisements in preparation to replace Allain.[3] [Doc. No. 13, Willer Advertisements, Exh. F].

Allain claims that she met her fundraising goals in every year except fiscal years 2006-2007 and 2007-2008.  Allain attributes those shortfalls to the economic recession and because her workload doubled during that period.[4] [Doc. No. 22,  Allain Deposition, Exh. 4, pp. 27-34].  ULM also claims that Allain failed to meet her fundraising goals in fiscal year 2010.  However, Allain contends that she was on pace to meet her goals in 2010, and, even if she did not meet those goals, that she was unable to do so because she was on FMLA-protected leave.

On August 10, 2011, Allain filed a charge of discrimination with the U.S. Equal Employment

---

[2] Willer's statement is allegedly contained in his August 12, 2014 deposition from pages 4-19, but, again, the deposition is not in the record.

[3] This testimony is purportedly in Willer's deposition on pages 13-23.

[4] Allain claims that during this period, she was tasked with raising funds for capital campaigns (*e.g.,* for an expensive pieces of equipment not normally factored into KEDM's fundraising budget) in addition to her normal fundraising responsibilities.

Opportunity Commission ("EEOC") alleging violations of Title VII and the ADEA.  On March 26, 2013, she amended her EEOC charge to allege violations of the ADA.  The EEOC  issued a notice of a right to sue on July 30, 2013.

Allain initiated this action on September 27, 2013, asserting claims under Title VII, the ADEA, the ADA, the FMLA, and state contract law.[5]

On September 8, 2014, ULM filed a motion to dismiss and, alternatively, for summary judgment (hereafter "Motion for Summary Judgment")[Doc. No. 13].  Allain filed a memorandum in opposition [Doc. No. 22], to which ULM replied. [Doc. No. 23].  A jury trial was initially set for December 15, 2014, but the Court continued the trial without date in its September 17, 2014 Order, pending a ruling on the instant Motion. [Doc. No. 18].

## II.   LAW AND ANALYSIS

### A.   Summary Judgment Standard

When considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court's review is limited to the pleadings.  If, however, "matters outside the pleading[s] are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . . ." FED. R. CIV. P. 12(b).  The Court has examined matters outside the pleadings in connection with ULM's motion, and, consequently, the motion is considered under the summary judgment standard.

Under Federal Rule of Civil Procedure 56, summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no

---

[5]  Allain had a one-year contract of employment terminating on June 30, 2011. *See* [Doc. No. 22, Exh. 6].

4

genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2).  The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994).  In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.  However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Thus, Summary Judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)(citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248(1986)).

### B.    ADEA Claim

Allain alleges that ULM discriminated against her on the basis of her age. Under the ADEA, it is "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age." *See* 29 U.S.C. § 623(a)(1).

5

When a plaintiff alleges age discrimination, "liability depends on whether the protected trait actually motivated the employer's decision." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 141 (2000).  More specifically, the individual's age must have "actually played a role in [the employer's decision making] process and had a determinative influence on the outcome." *Id.* at 141. Therefore, by a preponderance of the evidence, the plaintiff must prove that age was the "but-for" cause of the challenged adverse employment action. *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167, 177–78 (2009).

A plaintiff may prove her case by direct or circumstantial evidence. *Reeves*, 530 U.S. at 141. Evidence is direct when it "proves the fact of discriminatory animus without inference or presumption." *Terry v. Promise Hosp. of Ascension, Inc.*, CIV. A. NO. 13-128-SDD, 2014 WL 4161581, at *5 (M.D. La. Aug. 19, 2014).[6] Evidence is circumstantial when an inference is required for the evidence to tend to prove discriminatory animus. *Terry,* 2014 WL 4161581, at 5.  In order for comments to constitute direct evidence of age discrimination, they must be "1) age related; 2) proximate in time to the termination; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue." *Reed v. Neopost USA, Inc.,* 701 F.3d 434, 441 (5th Cir. 2012) (citing *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 655 (5th Cir. 1996)

---

[6] *See also Laxton v. Gap*, 333 F.3d 572, 583 at n. 4 (5th Cir. 2003) (noting that, in light of the Supreme Court's decision in *Reeves*, the *Brown* test applies only when a remark is presented as direct evidence of discrimination). Where a plaintiff offers remarks as circumstantial evidence alongside other alleged discriminatory conduct, however, the Fifth Circuit has applied a more flexible two-part test.  *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 226 (5th Cir. 2000).  In that circumstance, a plaintiff need only show (1) discriminatory animus (2) on the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decisionmaker. *See Laxton*, 333 F.3d at 583 (citing *Russell*, 235 F.3d at 226).

6

(*abrogated on other grounds* by *Spears v. Patterson UTI Drilling Co.*, 337 F. App'x 416, 419 (5th Cir. 2009)).

The burden-shifting framework of *McDonnell-Douglas* is used by courts if the plaintiff lacks direct evidence of discrimination. *Reeves*, 530 U.S. at 142-3. Under the *McDonnell-Douglas* framework, a plaintiff must establish a *prima facie* case of discrimination. To establish a *prima facie case* of age discrimination based on circumstantial evidence, a plaintiff must show she (1) was at least 40 years old, (2) was qualified for the position, (3) suffered an adverse employment action, and (4) was replaced by someone younger or treated less favorably than similarly situated younger employees. *Smith v. City of Jackson, Miss.,* 351 F.3d 183, 196 (5th Cir. 2003). Given that the discrimination prohibited by ADEA is based on an individual's age, the fact that one person in the protected class (40 years of age or older) has lost out to another person in the protected class is irrelevant, so long as he has lost out because of his age. *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312 (1996).

If the plaintiff makes out a *prima facie* case, the burden shifts to the employer to provide evidence that adverse action was taken for a legitimate, nondiscriminatory reason. *Tyler v. Union Oil Co. of Cal.,* 304 F.3d 379, 395 (5th Cir. 2002). If such a reason is produced, then the employee must provide evidence to rebut the reasons given as pretext for discrimination. *Id.*

Allain can overcome summary judgment on her ADEA claim because she has presented direct evidence of age discrimination. Davidson, Allain's former co-worker, avers that Willer told him on several occasions that his goal was to terminate Allain and replace her with a considerably younger female. [Doc. No. 22, Affidavit of Ray Davidson, Exh. 13]. Davidson also avers that Willer told him numerous times, in reference to Allain, that he wanted "new blood." *Id.* These comments

constitute direct evidence of age-related discriminatory animus because they are age-related, were made by an individual with authority to terminate Allain (Willer), and were certainly related to her termination. The only questionable element needed to satisfy the *Brown* test for direct evidence is the temporal proximity prong.  That element is explained away by ULM's position that Allain was not terminated earlier out of respect for her medical condition and that it did not want to cause a disruption at KEDM.

Even if Davidson's statements do not constitute direct evidence, Allain can still overcome summary judgment because she has established a *prima facie* case of age discrimination and can rebut ULM's proffered legitimate, non-discriminatory reasons as pretextual.  She was 59 years old when she was terminated and replaced by a younger employee, and it is undisputed that she was qualified for her position.  Therefore, she has established a *prima facie* case.

ULM cites her underperformance and insubordination as its legitimate, nondiscriminatory reasons.[7]  However, even assuming that Davidson's testimony does not constitute direct evidence, his testimony certainly provides sufficient evidence of pretext to rebut ULM's justifications. Moreover, there is ample other evidence indicating that ULM's legitimate, nondiscriminatory reasons are pretextual.  First, ULM's contention that it had decided to terminate Allain for underperformance in October of 2010 is questionable because Allain was not, in fact, terminated until after she returned from FMLA leave.  Second,  ULM terminated two other KEDM employees

---

[7]  The Court notes that ULM has not provided competent summary judgment evidence with regard to its claim of  insubordination.  It repeatedly cites Willer's deposition for the proposition that Allain was insubordinate, but did not provide the deposition.  Nevertheless, even assuming Willer testified as ULM contends, his testimony would not change the Court's conclusion that Allain has presented sufficient evidence of pretext to create factual issues of age discrimination for the jury.

and replaced them with younger individuals.  Third, Allain's testimony that she overheard Dean Cass inform Willer that he wished to get rid of tenured professors and replace them younger employees creates factual issues as to whether ULM fosters a cultural bias against older employees and unlawfully acted on that bias by terminating Allain.

Accordingly, ULM's Motion for Summary Judgment is DENIED to the extent it seeks dismissal of Allain's ADEA claim.

### C.    FMLA Retaliatory Discharge Claim

Allain asserts that ULM's decision to terminate her employment was also motivated by retaliatory animus for her taking medical leave under the FMLA.  Specifically, she alleges that she was discharged because she could not perform her duties while she was on FMLA leave.

The FMLA prohibits employers from "interfer[ing] with, restrain[ing], or deny[ing] the exercise or the attempt to exercise, any right provided under" the act.  29 U.S.C. § 2615(a)(1).  Retaliatory discharge claims under the FMLA are treated as disparate treatment claims and, in the absence of direct evidence of retaliatory intent, the familiar *McDonnell-Douglas* burden shifting framework applies to determine whether the employer discharged an employee in retaliation for participating in FMLA-protected activities.  *Hunt,* 227 F.3d at 768.  To make a *prima facie* case of retaliatory discharge, a plaintiff must show "that (1) she engaged in a protected activity, (2) the employer discharged her, and (3) there is a causal link between the protected activity and the discharge**.**" *Richardson v. Monitronics Int'l, Inc*., 434 F.3d 327, 335 (5th Cir. 2005) (citing *Hunt v. Rapides Healthcare Sys., L.L.C.*, 227 F.3d 757, 768 (5th Cir. 2001)). "When evaluating whether the adverse employment action was causally related to the FMLA protection, the court shall consider the temporal proximity between the FMLA leave, and the termination."' *Mauder v. Metro. Transit*

9

*Auth. of Harris Cnty., Tex.*, 446 F.3d 574, 583 (5th Cir. 2006) (internal citations and quotations omitted).

Once the plaintiff establishes a *prima facie* case, the defendant must offer a legitimate, nonretaliatory reason for the termination.  This burden is one of production, not persuasion; it "can involve no credibility assessment."  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993).  The burden then shifts to the employee to show the articulated reason was a pretext for retaliation. *Richardson,* 434 F.3d at 332.

The traditional *McDonnell–Douglas* framework, however, does not always apply in FMLA retaliatory discharge cases.  Instead, the mixed-motive framework can apply where the employee argues that discrimination was a motivating factor in her termination.  *Richardson*, 434 F.3d at 333(citing *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003); *Rachid v. Jack in the Box, Inc.*, 376 F. 3d 305 (5th Cir. 2004)).  The  mixed-motive framework is identical to the *McDonnell–Douglas* framework until the final pretext stage.  The plaintiff, instead of showing pretext, must merely show that the employer's nonretaliatory reason, although true, is but one of the reasons for its conduct, another of which was retaliation.  *Richardson*, 434 F.3d at 333.  "If the employee proves that discrimination [or retaliation] was a motivating factor in the employment decision, the burden again shifts to the employer, this time to prove that it would have taken the same action" despite the retaliatory animus.  *Id.*

Allain can establish a *prima facie* case of FMLA retaliatory discharge. It is undisputed that she was terminated after she took FMLA-protected leave.  She has therefore established the first two elements of her *prima facie* case.  ULM, however, contends that Allain cannot establish the third element (the causal link prong), arguing that Willer's deposition establishes definitively that he had

10

decided to terminate her even before she took FMLA leave. That argument, however, is unpersuasive because Willer did not in fact terminate her at that time, and, consequently, cannot foreclose the possibility of Allain establishing her *prima facie* case.

Allain can establish a causal link.  The "causal link" prong is "established when the evidence demonstrates that the employer's decision to terminate was based in part on knowledge of the employee's protected activity." *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001).  The Supreme Court has held that, in order to establish the causal link, temporal proximity, if offered by itself, must be "very close." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (*per curiam*) (noting that time periods of three and four months had been found by the appellate courts to be "very close" and holding that a period of twenty months was not "very close"); *see also Mauder v. Metro. Transit Auth. of Harris Cnty.*, 446 F.3d 574, 584 (5th Cir. 2006) (citing *Breeden*)). It is undisputed that Allain returned from FMLA-protected leave on March 1, 2011, and was informed that she was being terminated approximately six weeks later on April 14, 2011.  Allain has, therefore, established her *prima facie* case.

Because Allain can establish a *prima facie* case, the burden shifts to ULM to articulate a legitimate, non-retaliatory reason.  ULM cites Allain's underperformance and insubordination as its legitimate, non-retaliatory reasons and argues that its reasons are bolstered by Willer's alleged decision to terminate her prior to the FMLA leave.  In support of its claim that Allain was underperforming, ULM highlights that Allain failed to meet her fundraising goals in fiscal years 2007, 2008, and 2010.  As evidence of Willer's alleged decision to terminate Allain before she took FMLA leave, ULM provides fliers from KEDM affiliates that Willer had been collecting.  These fliers advertised positions similar to Allain's.

11

The burden therefore shifts back to Allain to show, by a preponderance of the evidence, that either (a) the articulated reasons were pretext for retaliatory animus (the traditional *McDonnell–Douglas* pretext alternative) or (b) that, while ULM's articulated reasons may be true, they are but one explanation for its conduct, another of which was discriminatory animus (mixed-motive alternative).  In this case, the pretext and mixed-motive analyses are substantially similar.  Nonetheless, because it is not entirely clear upon which theory Allain relies (*see* Doc. No. 22, pp. 5-6)*,* and because ULM argues that Allain cannot proceed on a mixed-motive theory, the analysis is separated into two sections for the sake of clarity.

### 1.    *Pretext Alternative*

Allain has produced sufficient evidence of pretext to overcome summary judgment.  A plaintiff may establish pretext "by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Jackson v. Cal W. Packaging Corp*., 602 F.3d 374, 378 (5th Cir. 2010) (quoting *Tex. Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).  Whether summary judgment is appropriate "depends on numerous factors, including 'the strength of the plaintiff's *prima facie* case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered.'" *Piper v. Veneman,* 183 F. App'x 407, 410 (5th Cir. 2006) (quoting *Reeves,* 530 U.S. at 148-49).

Allain has presented a strong *prima facie* case and can show by a preponderance of the evidence that ULM's non-retaliatory reasons are pretextual for several reasons.  First, there are factual questions as to whether Allain's cited "underperformance" is the actual reason she was terminated.   She was on FMLA leave for five months in 2010.   Allain's performance, while on FMLA leave, cannot be held against her, and the fact that ULM cites her 2010 underperformance

12

as a non-retaliatory reason further discredits its claim that her failure to meet her fundraising goals in other years was the real reason she was terminated.  Second, Allain met her goals in every other year but 2007 and 2008, and she claims she was unable to do so in those years because of the national recession and because her workload had doubled. Third, ULM's contention that it had decided to terminate Allain before she took FMLA leave because of her underperformance and insubordination is at odds with its initial communication to Allain that she was being terminated "without cause." Further, she was not, in fact, terminated until after she returned.

### 2.    *Mixed-Motive Alternative*

ULM argues that Allain has foreclosed the possibility of a mixed-motive argument, contending that the mixed-motive analysis "is only applicable where the employee *concedes* that discrimination was not the sole reason for her discharge." *Richardson*, 434 F.3d at 333 (emphasis added).  Allain has not definitively "conceded" that ULM's retaliatory animus was the sole reason for her discharge, and she does not specifically allege that she is proceeding under a mixed-motive theory.

However, Allain is not required to "concede" that discrimination was not the sole reason for her discharge in order to proceed under a mixed-motive theory.  In *Smith v. Xerox Corp*., 602 F.3d 320 (5th Cir. 2010), a Title VII retaliation case, the United States Court of Appeals for the Fifth Circuit ("the Fifth Circuit") clarified its previous, FMLA mixed-motive holding in *Richardson.*  The *Smith* court stated that "the mixed-motive framework does not require the plaintiff to concede that the employer's stated reason was legitimate. That is why we have juries." *Smith,* 602 F.3d 320, 333 (*abrogated on other grounds* by *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 186 L. Ed. 2d 503 (2013)).  Ultimately*,* the *Smith* court held that the plaintiff was not required to label his case

13

"as either a 'pretext' case or a 'mixed-motive' case from the beginning in the District Court."' *Smith,* 602 F.3d at 33 (internal citations and quotations omitted).

For the same reasons stated above in the "Pretext Alternative" analysis, Allain has presented sufficient evidence to create factual issues as to whether the exercise of her FMLA rights was at least a motivating factor in ULM's decision to terminate her.

The burden then shifts to ULM to show that it would have terminated Allain anyway, despite the retaliatory animus. ULM cannot carry that burden, at least on summary judgment, because they did not terminate her until soon after she returned from FMLA leave. Consequently, ULM's Motion for Summary Judgment is DENIED to the extent it seeks dismissal of Allain's FMLA claim.

### D.    State Law Breach of Employment Contract Claim

Because Allain was terminated before her one-year contract of employment concluded, she alleges that she was denied her right to various employment related benefits. ULM argues that she was an at-will employee, and, even is she were not, that she cannot recover the employment related benefits she claims ULM denied her.

Allain's employment contract with ULM had a stated one-year term of July 1, 2010, through June 30, 2011. [Doc. No. 22, Exh. 7, p. 2, Allain Employment Contract]. However, the agreement also indicated that it was an employment-at-will contract, stating that the "position is not guaranteed for the duration of this term because it is held at the pleasure of the President." *Id.* Allain was terminated on April 15, 2011, two and one-half months before the term concluded. ULM stated in writing that she was fired "without cause."

Because an "ambiguous provision in a contract is construed against the drafter," in this case ULM, the Court finds that there are factual issues as to whether Allain had a contract of employment

14

for one year, and, consequently, whether ULM breached that contract and denied her employment related benefits by terminating her "without cause" before the stated term concluded.  *See La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So.2d 759, 764 (La. 1994).  Therefore, ULM's Motion for Summary Judgment is DENIED to the extent it seeks dismissal of Allain's state law breach of contract claim.

### E.    Title VII and ADA Claims

Allain does not oppose the dismissal of her ADA and Title VII claims.  She admits that the facts have not revealed that a violation of those acts occurred.  Therefore, ULM's Motion for Summary Judgment is GRANTED to the extent it seeks dismissal of Allain's claims arising under Title VII and the ADA**.**

### III.    CONCLUSION

ULM's Motion for Summary Judgment [Doc. No. 13] is GRANTED IN PART AND DENIED IN PART. The motion  is GRANTED to the extent it seeks dismissal of Allain's Title VII and ADA claims. The motion is otherwise DENIED.

MONROE, LOUISIANA, this 22nd day of January, 2015.


**ROBERT G. JAMES**
**UNITED STATES DISTRICT JUDGE**

15